## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Matthew D. Malmquist, after being duly sworn, do hereby depose and state:

1. I am a Special Agent (SA) of the United States Department of Homeland Security, Homeland Security Investigations (HSI), assigned to HSI Houston and have been so employed since August 2010. I hold a Bachelor of Arts Degree in Political Science, History, and Middle Eastern Studies from the University of Texas at Austin. Prior to my employment by HSI, I served as an infantryman in the United States Army. I am a graduate of the Federal Law Enforcement Training Center at Glynco, Georgia. During the course of my career, I have conducted investigations involving the possession and importation of controlled substances and have received training in the investigation of violations of the Controlled Substances Act as found in Title 21, United States Code.

2. The information enumerated in the paragraphs below, furnished in support of this criminal complaint for Tanveer AHMED, A.K.A. Tanvir AHMED, A.K.A. Tony AHMED, A.K.A. Allah Rakha JAVED, A.K.A. Ahmed Allah Rakha JAVED is based upon information of my own personal knowledge, observations and or facts related to me by other agents of HSI and or other law enforcement personnel involved in this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause for this arrest warrant, the affidavit may not contain every fact known to me during the course of this investigation.

3. Based on the facts and observations contained herein, I submit that Tanveer AHMED (hereinafter, "AHMED") has, within the Southern District of Texas and in the countries of the United Arab Emirates (UAE), South Africa, Mozambique, and elsewhere, within the extraterritorial jurisdiction of the United States, conspired with others known and yet unknown to possess with intent to distribute heroin and did so intending, knowing, or having reasonable cause to believe, that such substance would be unlawfully imported into the United States; did knowingly, willfully, and intentionally conspire with others known and yet unknown, to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin while upon the high seas on board a vessel subject to the jurisdiction of the United States, a Schedule I controlled substance, and is therefore punished under 21 U.S.C. § 960(b)(2)(A), in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b).

4. On or about February 19, 2014 (GMT), an undercover operative (hereinafter, "UC") for HSI met with Abdul Basit JAHANGIR and Salim Omar BALOUCH in a hotel in Dubai, United Arab Emirates (UAE) to negotiate the purchase of ten (10) kilograms of heroin. During this meeting, BALOUCH and JAHANGIR agreed to sell the UC ten (10) kilograms of heroin delivered to east Africa. The UC agreed to provide BALOUCH and JAHANGIR with a $50,000 United States Dollar (USD) down payment before taking receipt of the heroin. After this meeting, JAHANGIR facilitated a telephonic introduction between the UC and Ibrahim Omary MADEGA, an illicit associate of JAHANGIR and BALOUCH that could possibly arrange transportation for the UC's purchased heroin from Africa to North America.

5. On or about February 25, 2014, the UC placed a consensually recorded telephone call to MADEGA. During this telephone call, MADEGA told the UC, "Let me give you my, my email

1

address....bakerrangers@yahoo.com." MADEGA offered his email address to the UC to facilitate communication between them and stated, "anytime, fulltime, I have my email." During this telephone call, the UC also told MADEGA that he was tentatively planning travel to South Africa to meet with MADEGA in person.

6. On or about March 26, 2014, the UC met with MADEGA in-person in South Africa. During this meeting, MADEGA agreed to facilitate the transportation of heroin for the UC from Africa to Canada. The UC then paid MADEGA $6,000 USD as a down payment for MADEGA's heroin transportation/concealment services. During later consensually recorded communications between the UC and MADEGA, the UC requested that the heroin delivery location be changed from Canada to the United States. MADEGA agreed.

7. On or about April 1, 2014, the UC placed a consensually recorded telephone call to BALOUCH. During the resultant conversation, BALOUCH informed the UC that BALOUCH had already dispatched the UC's ten (10) kilograms of heroin, which would arrive in east Africa in twenty (20) to twenty-five (25) days. On or about April 23, 2014, an Australian Navy vessel intercepted a large cargo dhow (generic term for an Arab-style boat) near the coastline of eastern Africa. A boarding team from the Australian Navy vessel subsequently searched the dhow and discovered it was transporting approximately 1,032 kilograms of heroin.

8. On or about April 25, 2014, the UC placed a consensually recorded telephone call to MADEGA. During the resultant conversation, MADEGA advised the UC that "1,000 kg (kilograms)" of heroin was seized from a smuggling vessel two (2) days prior. MADEGA also noted that "296" kilograms from the heroin seizure were MADEGA's. On or about April 30, 2014, BALOUCH sent the UC a message via the internet-based messaging application WhatsApp, which stated that BALOUCH had a "problem" with his "ship," but the UC should not worry and would receive his heroin order "soon." On or about May 1, 2014, BALOUCH sent the UC another WhatsApp message, in which BALOUCH estimated that the UC's heroin order would now arrive in east Africa within another twenty (20) to twenty-five (25) days.

9. On or about May 26, 2014, a United Kingdom Royal Navy vessel intercepted a dhow in or around the Arabia Sea that was found to be transporting approximately fifty (50) kilograms of heroin. On or about June 10, 2014, JAHANGIR informed the UC that his ten (10) kilogram heroin order had been lost as part of a fifty (50) kilogram heroin shipment that was intercepted at sea. JAHANGIR also informed the UC that the maritime smuggling route used by JAHANGIR, BALOUCH, and others to transport heroin to the eastern coast of Africa had become unnavigable and would remain as such for two (2) or three (3) months. Based on my experience in this investigation and from consultation with other U.S. Federal Agents charged with investigating contraband smuggling in the Southwest Asia and Africa regions, I know that the ocean area between the Makran Coast and eastern Africa is affected by an annual monsoon season from approximately June to September each year, which makes this area difficult for smaller vessels to navigate.

10. On or about October 11, 2014, BALOUCH sent the UC several WhatsApp messages indicating that he was preparing to dispatch the UC's ten (10) kilogram heroin order to MADEGA and he anticipated that the transportation time would be "25 days." On or about November 3, 2014, the UC received a WhatsApp message from MADEGA indicating that MADEGA had received the

UC's ten (10) kilogram heroin order from BALOUCH and JAHANGIR. On or about December 20, 2014, the UC met with MADEGA in Johannesburg, South Africa, where the UC took receipt of the ten (10) kilogram heroin order. The UC then paid MADEGA a $10,000 USD cash payment for transporting the ten (10) kilograms of heroin from their initial delivery location to the UC in South Africa. HSI retained a representative sample from the ten (10) kilograms of heroin and transported it back to the U.S. for laboratory analysis, which confirmed the substance the UC took delivery of in South Africa was in fact heroin. On or about January 15, 2015, HSI arrested MADEGA pursuant to an indictment charging MADEGA with violations of Title 21, United States Code, Section 846. MADEGA is currently in federal custody in Houston, Texas. On March 8, 2017, MADEGA pled guilty to conspiracy to possess with intent to distribute more than one kilogram of heroin in violation of Title 21, United States Code, Section 846. He is pending sentencing before the Honorable U.S. District Judge Sim Lake.

11.     On or about May 29, 2014, the Honorable Nancy K. Johnson, U.S. Magistrate Judge for the Southern District of Texas signed a warrant authorizing the search of MADEGA's email account, bakerrangers@yahoo.com. Additionally, on or about June 3, 2015, MADEGA, under advice of counsel, provided HSI with verbal and written consent to search his email account, described as bakerrangers@yahoo.com. Utilizing both methods of access, HSI discovered approximately forty-one (41) email messages within MADEGA's email account that collectively comprised a detailed transaction ledger. During HSI interviews, MADEGA reported that this ledger details heroin transactions MADEGA conducted with a Pakistani heroin supplier MADEGA knew personally (hereinafter, "Heroin Supplier") and his coconspirator/s (hereinafter, "Heroin Supplier, et al."). MADEGA also reported that the heroin shipments and payments described in this ledger are an accurate, though not all-inclusive, representation of MADEGA's narcotics transactions with the Heroin Supplier, et al. This ledger reflects that MADEGA received approximately 837 kilograms of heroin from the Heroin Supplier, et al. and made approximately $4.88 Million (M) USD in payments toward the approximate $8.82M USD the Heroin Supplier, et al. charged MADEGA for the heroin.

12.     The first thirteen (13) of the approximate forty-one (41) email messages comprising the ledger were sent or received from a Gmail subscriber approximately between November 22, 2013 and April 3, 2014. These approximate thirteen (13) email messages indicate that MADEGA received 505 kilograms of heroin from the Heroin Supplier, et al. at a total charged cost of $5.168M USD and, as of April 3, 2014, MADEGA had made approximately $2.198M USD in payments toward his rolling debt to the Heroin Supplier, et al. On or about April 17, 2014, MADEGA started receiving updates to this ledger from leonaz2108@gmail.com, but the calculations, general style, and format of the ledger remained largely unchanged from the previous thirteen (13) email messages. MADEGA noted during an HSI interview that soon after MADEGA began receiving the ledger updates from leonaz2108@gmail.com, the Heroin Supplier informed MADEGA that the Heroin Supplier had changed his email address.

13.     MADEGA continued receiving email ledger updates from leonaz2108@gmail.com until approximately January 2015, when MADEGA received the last discovered email message in this ledger chain. Between April 2014 and January 2015, approximately twenty-eight (28) email ledger messages were sent or received from the leonaz2108@gmail.com. These email ledger messages detailed MADEGA's receipt of an additional 332 kilograms of heroin from the Heroin Supplier, et al., bringing the total received heroin quantity described in the ledger to 837 kilograms. MADEGA

reported to HSI that he believes the Heroin Supplier, or one of his coconspirators, is the subscriber of both Gmail email accounts that sent the above-described ledger emails to MADEGA. MADEGA also reported to HSI during interviews that he communicated telephonically with the Heroin Supplier about this email ledger, specifically citing that the Heroin Supplier had, at times, directed MADEGA to check his email account and informed MADEGA that he had sent MADEGA an email message. On or about August 28, 2015, the Honorable John R. Froeschner, U.S. Magistrate Judge for the Southern District of Texas signed a warrant authorizing the search of the leonaz2108@gmail.com email account.

14. On or about April 18, 2014, MADEGA received the following email message from leonaz2108@gmail.com:

> Old Balance: 2900000/-
> Dated: 17.04.2014, Received: 20000/-
> Remaining Balance: **2880000/-**

During HSI interviews, MADEGA provided the following information about deciphering the above-quoted email message: All five (5) and seven (7) digit figures are in reference to monetary amounts in USD. The line that states, "Dated: 17.04.2014, Received: 20000/-" acknowledges receipt on April 17, 2014 of a $20,000 USD payment MADEGA paid in cash directly to the Heroin Supplier's associate/s in Tanzania for forwarding to the Heroin Supplier, et al. The phrase "Old Balance" refers to the debt amount MADEGA owed to the Heroin Supplier, et al. prior to making the $20,000 USD payment referenced in the email message. The phrase "Remaining Balance" refers to the debt amount MADEGA still owed to the Heroin Supplier, et al. after making the $20,000 USD payment referenced in the email message.

15. On or about October 29, 2014, MADEGA received the following email message from leonaz2108@gmail.com:

> Previous Balance: 1997000/-
>
> New consignment Dated: 28.10.2014, total 140,Drums, per Drum 11000/-
> total amount of new consignment: 1540000/- + Previous Balance: 1997000/-.
>
> Dated: 29.10.2014, Total Balance: **3537000/-**

Based on my training, experience in this and similar investigations, and statements made by MADEGA, as detailed above, I believe the foregoing quoted email message is deciphered as follows: MADEGA had an outstanding debt balance of $1.997M USD and then, on October 28, 2014, received a "consignment" of 140 kilograms of heroin, for which he was charged $1.54M USD. Adding the price of the 140 kilogram consignment to MADEGA's outstanding debt balance gave him a new debt balance of $3.537M USD.

16. On or about November 1, 2018, the Honorable Frances H. Stacy, U.S. Magistrate Judge for the Southern District of Texas signed a warrant authorizing the search of the tnvrahmd255@gmail.com email account. The search of the tnvrahmd255@gmail.com email account

revealed approximately forty-two (42) email messages between tnvrahmd255@gmail.com and leonaz2108@gmail.com that collectively comprised a transaction ledger, detailing suspected heroin shipments and payments. The style, format, and terminology of these email messages between tnvrahmd255@gmail.com and leonaz2108@gmail.com are consistent with that of the heroin sale ledger emails MADEGA received from leonaz2108@gmail.com. Given this and other factors, it is believed that the sender of, and terminology definitions used in, all leonaz2108@gmail.com email messages referenced in this affidavit are the same.

17. On or about April 23, 2015, tnvrahmd255@gmail.com received an email message from leonaz2108@gmail.com that summarized multiple suspected narcotics shipments as well as billing and payment information:

Dated:21.03.2015,New consignment,25 Drums,per drum,10000/-Amount:**250000/-**

    Dated:28.03.2015,Received:30000/-
    Dated:06.04.2015,Received:40000/-
    Dated:12.04.2015,Received:16300/-
    Dated:13.04.2015,Received:27800/-
    Dated:20.04.2015,Received:44000/-
    Total Amount Received:**158100/-**

Remaining Balance:91900/-

Dated:17.04.2015,New consignment,50 Drums,per drum,10000/-Amount:**500000/-**

Dated:23.04.2015,New consignment from Saleem,100 Drums,per drum,12500,Amount:**1250000/-**

Total Remaining Balance:**1841900/-**

Based on the above-listed qualifications for interpreting ledger-type emails from the Heroin Supplier, et al., I believe this email message itemized the delivery of 175 kilograms of suspected heroin ("drums") over three (3) shipments approximately between March and April 2015, at a total charged cost to the tnvrahmd255@gmail.com user of $2M USD. This email message also shows that the tnvrahmd255@gmail.com user paid approximately $158,100 USD toward this balance over five (5) payments.

18. In total, the approximate forty-two (42) email message ledger between tnvrahmd255@gmail.com and leonaz2108@gmail.com shows that: approximately between March 2015 and May 2016, the user of tnvrahmd255@gmail.com received approximately 399.5 kilograms of heroin from the Heroin Supplier, et al. and made approximately $1.6659M USD in payments toward the approximate $4.4895M USD the Heroin Supplier, et al. charged the user of tnvrahmd255@gmail.com for the heroin.

19. In addition to the above-described email drug ledger, the search of the tnvrahmd255@gmail.com email account revealed that on or about August 2, 2015, an email message

5

was sent from tnvrahmd255@gmail.com to tnvrahmd255@gmail.com containing multiple image attachments. The subject line of this message read: "ID card passport copy." Among the attached images were multiple photographs of a Pakistani passport bearing the name Tanveer Ahmed with the date of birth: October 21, 1979 and a visa from the United Republic of Tanzania, also issued to Tanveer Ahmed with the date of birth: October 21, 1979. Two other email messages sent on or about August 2, 2015 from tnvrahmd255@gmail.com to tnvrahmd255@gmail.com contained multiple images of a man posing alone, many of which appeared to be self-taken photographs based on the camera angle and distance. The subject lines of these two email messages both read: "My pictures." The individual posing in these photographs appears to be Tanveer Ahmed, as depicted in the biometric photographs on the aforementioned Tanveer Ahmed passport and Tanzanian visa.

19. On January 11, 2019, HSI agents and an Assistant U.S. Attorney interviewed MADEGA in the Southern District of Texas. During this interview, HSI agents showed MADEGA the biometric photograph of the aforementioned Pakistani passport bearing the name Tanveer Ahmed that was discovered in the tnvrahmd255@gmail.com email account. MADEGA identified him as "Tanveer" and reported the following: In or about 2011 to 2012, MADEGA was introduced to "Tanveer" for the purpose of conducting heroin-related business. MADEGA reported that, during their initial meeting, "Tanveer" offered to provide MADEGA heroin if MADEGA was willing to provide a person to be held as a collateral bond in Pakistan until MADEGA made payment for the heroin. MADEGA did not have anyone to send as collateral bond at that time, but did exchange contact information with "Tanveer." Approximately four to six months later, "Tanveer" informed MADEGA that "Tanveer" had approximately 200 kilograms of heroin waiting on a smuggling boat that he wanted to sell to MADEGA. "Tanveer" gave MADEGA a forty-five-gram sample of the heroin and told him that he would need MADEGA to provide a cash down payment for the approximate 200 kilogram shipment because "Tanveer" needed the money to pay the for the smuggling boat's services. MADEGA noted that he determined that the sample of heroin given to him by "Tanveer" weighed forty-five grams by weighing it and then sold it to other individuals who used it and reported its quality to MADEGA.

20. Based on my training and experience in this and similar investigations, I am aware that drug trafficking organizations in South Asia routinely utilize fishing and cargo dhows (Arab-style boats) to smuggle bulk quantities of heroin to the east coast of Africa. These boats commonly do not fly a country flag, fly country flags of convenience, or otherwise sail without nationality, making them subject to the jurisdiction of the United States. Based on this knowledge and experience and my ongoing investigation in this case, I know that the Heroin Supplier, et al. and his/her co-conspirators use fishing and cargo dhows without nationality to distribute heroin to others.

21. Official Google records list "Tanvir Ahmed" as the subscriber to the tnvrahmd255@gmail.com email account. Based on my training, education, and experience, I know that it is common for foreign script words and names to be translated into the English alphabet phonetically. Therefore, in practice, "Tanvir" and "Tanveer" can both be English-alphabet representatives of the exact same name. According to his passport, Tanveer Ahmed is a Pakistani citizen. Urdu is an official language of Pakistan. Based on the contents and subscriber information of tnvrahmd255@gmail.com, I believe AHMED is the subscriber and user of the tnvrahmd255@gmail.com email account.

22. In June 2018, AHMED was arrested by police in Maputo, Mozambique in connection with the

6

Mozambique seizure of twenty-six (26) kilograms of heroin. At the time of his arrest, AHMED was in possession of the same Pakistani passport depicted in the photograph attached to the aforementioned email message sent from tnvrahmd255@gmail.com to tnvrahmd255@gmail.com on or about August 2, 2015.

23.     Based on my experience and the aforementioned facts and observations, I respectfully submit that there is probable cause to believe that Tanveer AHMED, A.K.A. Tanvir AHMED, A.K.A. Tony AHMED, A.K.A. Allah Rakha JAVED, A.K.A. Ahmed Allah Rakha JAVED did knowingly, intentionally, and unlawfully conspire with others known and yet unknown to possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846, as defined in Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(i); did knowingly conspire and agree together and with other persons known and unknown to the Grand Jury to manufacture, possess with intent to distribute and distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, intending, knowing, or having reasonable cause to believe, that such substance would be unlawfully imported into the United States in violation of Title 21, United States Code, §§ 963, 959(a), 960(a)(3) and (b)(2)(A) and, did knowingly, willfully, and intentionally conspire with others known and yet unknown, to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin while upon the high seas on board a vessel subject to the jurisdiction of the United States, a Schedule I controlled substance, and is therefore punished under 21 U.S.C. § 960(b)(2)(A), in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b).

_____
Matthew D. Malmquist
Special Agent
U.S. Homeland Security Investigations

Sworn and subscribed to before me this 11 day of January, 2019, and I find probable cause.

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

7